UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BURDICK BAKER, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-0240-B |
| | § | |
| GREAT NORTHERN ENERGY, INC., | § | |
| JOSEPH B. LOFTIS, | § | |
| RONALD JAMES ABERCROMBIE, | § | |
| ARKLATEX MINERALS, LLC | § | |
| NICOLE L. MARTIN, | § | |
| | § | |
|   Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim or, in the

Alternative, Motion to Compel Arbitration and Dismiss Action or Stay Proceedings (doc. 25) (the

"Motion"). For the reasons that follow, the Court **GRANTS** the Motion to the extent it seeks

dismissal for failure to state a claim, and **DENIES AS MOOT** the Motion to the extent it seeks to

compel arbitration.

I.

BACKGROUND

This case involves an oil and gas investment gone bad.[1] The investor who filed this suit is

Burdick Baker ("Baker"), a resident of Colorado. Doc. 1, Compl. ¶ 5. Baker brings this action against

five Defendants including Great Northern Energy, Inc. ("Great Northern"), a Texas-based

---

[1] The background that follows is drawn from the Complaint (doc. 1), with all non-conclusory factual
allegations "accepted as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

corporation involved in oil and gas, three current and former executives at Great Northern—James

Loftis ("Loftis"), Ronald James Abercrombie ("Abercrombie"), and Nicole L. Marti ("Marti")—and

Arkatex Minerals, LLC ("Arkatex"), a Texas-based entity "owned or controlled by Loftis and

Abercrombie." *Id.* ¶¶ 6-10, 20.

 The events in this case date back to "the summer of 2012," when Baker first "met or spoke

over the phone at various times with Defendant Loftis (who held himself out as the President of

Great Northern) to discuss investment opportunities." *Id.* ¶ 14. At that time, Loftis indicated "that

the investment would be very lucrative" and "would generate a substantial return." *Id.* ¶¶ 13, 43.

Loftis also represented "that the oil and gas [interests] were already profitable and producing oil,"

and "that Great Northern was producing more than 300 gross barrels per day of oil from its

operations." *Id.* ¶¶ 14, 43. Loftis further assured Baker "that he was experienced, well regarded and

honest operator with a long track record of successful results for investors." *Id.* ¶ 15.

 Relying "upon said representations," Baker subsequently agreed to invest "with Great

Northern." *Id.* ¶ 16. In accordance with this alleged agreement, Baker, "[o]n July 7, 2012 and

September 26, 2012 and on dates thereafter," sent Great Northern a number of payments. *Id.* ¶ 23.

 At some point, Baker discovered that his investment in Great Northern was not all that Loftis

had represented. For one, Baker claims that "Defendants did not have the resources necessary to

maximize the value of the assets" and "had substantial undisclosed debt[] and adverse claims." *Id.* ¶

47. Loftis, Abercrombie, and Marti also allegedly "treated Great Northern as their own personal

business and 'cookie jar' . . . without regard for the business or financial rights or interests of the

investors." *Id.* ¶¶ 30, 45, 47. Similarly, Defendants supposedly "concealed from [Baker] that [Great

Northern] had sold proceeds from production [] to Arkatex," which Defendants Loftis and

Abercrombie "owned or controlled." *Id.* ¶¶ 20, 45. And unbeknownst to Baker, Loftis purportedly had a $2 million default judgment entered against him shortly before negotiations with Baker and was once convicted "of bank fraud in connection with the use of an (sic) proceeds from a transaction." *Id.* ¶¶ 15, 44.

Presumably distressed over his investment, Baker "entered into a written agreement" with Great Northern on June 5, 2013 in which Great Northern "promis[ed], among other things, to repurchase the interest sold to [Baker] and his two brothers." *Id.* ¶ 25. Great Northern allegedly "breached that agreement, when, it issued a check that was not backed by sufficient funds at the time of issuance and by failing to perform the agreement by [the] June 29, 2013 date set for performance." *Id.* ¶ 26. After its "initial breach," Great Northern "remitted to [Baker's] counsel various funds that counsel is holding in escrow," which Baker has refused to accept. *Id.* ¶ 27.

On January 22, 2014, Baker filed suit against Defendants. His Complaint sets forth eleven different "Claim[s] for Relief." These include: (i) breach of contract (against Great Northern only); (ii) common law fraud (against all Defendants except Arkatex); (iii) a single securities fraud claim filed pursuant to § 10(b) of the Securities and Exchange Act of 1934, Rule 10b-5 promulgated thereto, and analogous provisions of the Texas Securities Act and Colorado Securities Act (against all Defendants except Arkatex); (iv) another securities fraud claim filed pursuant to § 12(2) of the Securities Act of 1933 (against all Defendants except Arkatex); (v) negligence (against all Defendants except Arkatex); (vi) misrepresentation (against all Defendants except Arkatex); (vii) breach of duty of good faith and fair dealing (against Great Northern); (viii) conspiracy (against all

Defendants except Arkatex); (ix) recission/mistake (against all Defendants);[2] (x) a Texas Uniform Fraudulent Transfer Act claim (against all Defendants); and (xi) a Texas Theft Liability Act claim (against all Defendants). *See id.* ¶¶ 33-106.

On March 14, 2014, Defendants jointly filed the present Motion. In it, Defendants first seek dismissal of all eleven claim in the Complaint for failure to properly state a claim upon which relief may be granted. *See* Doc. 25, Def.'s Mot. 1-18. In the alternative, Defendants move to compel arbitration and dismiss or stay the proceedings in light of an arbitration agreement between Baker and Great Northern signed in 2012. *See id.* at 18-21; Doc. 25-1, Ex. A (Operating Agreement).[3] In response, Baker asks the Court to deny all relief requested in Defendants' Motion. *See* Doc. 28, Pl.'s Resp. 1. On May 2, 2014, Defendants filed their Reply (doc. 29), rendering this Motion ripe for consideration. As seen below, the Court only reaches Defendants' first requested relief at this time—dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.

## RULE 12(b)(6) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6)

---

[2] This claim, identified as "Ninth Claim for Relief—Rescission of 2012 Transaction—Mistake," does not specify which Defendants are charged, so the Court presumes Baker seeks liability against all Defendants.

[3] Defendants note that the operating agreement is attached to their Motion "only with reference to the Motion to Compel Arbitration, and is independent from Defendants' Motion to Dismiss." Def.'s Mot. 20 n.6. Accordingly, the Court does not consider the attached operating agreement in evaluating whether to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Hunter v. Branch Banking & Trust Co.*, No. 3:12-CV-2437-D, 2013 WL 4052411, at *2 n.1 (N.D. Tex. Aug. 12, 2013) ("[A]ttaching documents to support [a] motion to compel arbitration does not transform [a] motion to dismiss into a factual attack; the two motions are separate.").

motion, it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible complaint does more than plead "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, a facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations raise no entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuviller v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, courts "must accept [all] well-pleaded facts" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Likewise, all well-pleaded facts must be "construed . . . in the light most favorable to the plaintiffs." *Kopp v. Klien*, 722 F.3d 327, 333 (5th Cir. 2013). However, courts need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

## III.

## ANALYSIS

Defendants' Motion seeks dismissal of all eleven of Baker's claims pursuant to Rule 12(b)(6), including the Complaint's breach of contract claim, various fraud-related claims, and other state tort causes of action. While Defendants also move in the alternative to compel arbitration, the Court only reaches Defendants' request for dismissal pursuant to Rule 12(b)(6) in its below analysis. This is because, for the reasons that follow, the Court agrees with Defendants that none of the Complaint's eleven claims are adequately pled, and as such, whether these claims should be

arbitrated is, at present, a moot issue.

    A.    *Breach of Contract (First Claim for Relief)*

Baker's first claim is for breach of contract under Texas law. "In Texas, 'the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)) (brackets omitted).

Baker's Complaint asserts two contracts that Defendant Great Northern allegedly breached. First, "[i]n 2012, [Baker] entered into an agreement with defendant Great Northern" whereby Baker "purchased a working interest in certain wells and production," and in return, "Great Northern was required to account for operations and to pay [Baker] the sums he was due as a result of his interest." Compl. ¶¶ 33-34. Great Northern allegedly "breached its obligations" under this 2012 agreement "by failing to account and pay the sums due." *Id.* ¶ 35. Second, Great Northern and Baker also entered into "a contract dated June 5, 2013," which Great Northern allegedly "breached . . . by failing and refusing the (sic) pay monies due [Baker] in accordance with its terms." *Id.* ¶ 37.

Defendants argue that these allegations are too vague and conclusory to survive a Rule 12(b)(6) challenge. They highlight that the Complaint fails to identify "the alleged 'sums' [or] 'monies' due under either agreement," and "is devoid of any contract language or provisions" related to the two agreements. Def.'s Mot. 3. They also submit that the Complaint refers ambiguously to an "agreement" or "the Agreement" without specifying which of the two agreements it is asserting. *Id.*

Baker counters that the Complaint "adequately alleges the elements of a breach of contract

claim under Texas law" by asserting "that there were two separate agreements with agreed upon terms, that he performed by sending money to [Great Northern], that [Great Northern] did not deliver on the investment as promised, constituting a failure by [Great Northern] to perform and that as a result [Baker] has incurred significant financial damage." Pl.'s Resp. 2-3. Baker maintains that these allegations are adequate "at this stage, prior to discovery." *Id.* at 3. The Court disagrees.

The Complaint's breach of contract claim fails "to enter the realm of plausible liability," because its allegations fall short of "the line between the conclusory and the factual." *Twombly*, 550 U.S. at 557 n.5. Put differently, the Complaint "fail[s] to allege enough facts about the terms of the [contracts] to raise [his] right to relief above the speculative level." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. 2014). Baker's pleadings fall short in this respect for two related reasons.

First, the Complaint "fail[s] to identify which provision[s]" of the two agreements Great Northern "allegedly breached." *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x 233, 238 (5th Cir. 2014). This Court and others throughout this Circuit have consistently indicated that, as a general rule, "'a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant.'"[4] In *Innova Hospital*, for example, the plaintiffs' breach of contract claim was dismissed because the complaint failed to "identify what provisions were breached or

---

[4] *Lara v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1686-B, 2013 WL 6242703, at *3 (N.D. Tex. Dec. 2, 2013) (quoting *King v. Wells Fargo Bank, N.A.*, No. 3:11–CV–0945–M–BD, 2012 WL 1205163, at *2 (N.D. Tex. Mar. 20, 2012); *see also Innova Hospital*, 995 F. Supp. 2d at 602; *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011); *Garrison v. Select Portfolio Servicing, Inc.*, No. 5:14-CV-337-DAE, 2014 WL 4187207, at *5 (W.D. Tex. Aug. 21, 2014); *Chapa v. Chase Home Fin. LLC*, No. CIV.A. C-10-359, 2010 WL 5186785, at *5 (S.D. Tex. Dec. 15, 2010) ("[B]ecause Plaintiff has failed to provide the loan documents and failed to indicate which loan documents—let alone which provisions—were breached, Plaintiff has failed to satisfy the pleading standards of Rule 8(a).").

provide factual allegations about the terms" at issue. 995 F. Supp. 2d at 603. The court rejected the complaint's conclusory assertions that the defendants "failed to pay the reimbursement rate 'required by the contracts' or the 'contractually agreed upon amounts,'" because these assertions did not clarify "what rates were required or contractually agreed upon by the parties." *Id.*

Similarly, in this case, the Complaint merely concludes that Great Northern "breached its obligations" under the two agreements at issue, without specifying which provisions or terms of the two contracts Great Northern allegedly breached. Regarding the first agreement, the Complaint simply states that Great Northern failed to pay Baker "the sums he was due" under the contract. Compl. ¶ 35. It never specifies, however, what particular provision is at issue or even the "sums" that Great Northern supposedly failed to pay in accordance with the agreement. Likewise, with respect to the second agreement, the Complaint only alludes to the "terms" Great Northern breached, without clarifying what those terms were or how Great Northern violated them. *Id.* ¶ 36. Such vague and conclusory allegations deprive Great Northern of fair notice,[5] and thus, fail to state a plausible breach of contract claim.

Second, the Complaint further deprives Great Northern of fair notice through its confusing and unspecified assertions regarding the two purported agreements supporting Baker's single claim. To illustrate, the allegations under the Complaint's sole breach of contract heading begin by identifying two agreements and the two ways in which Great Northern allegedly breached each agreement. *See id.* ¶¶ 33-37. But thereafter, the allegations simply reference the parties' actions in

---

[5] Federal Rule of Civil Procedure 8(a)(2) requires, among other things, that a complaint "provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

relation to "that agreement" or "the terms of the Agreement," and assert entitlement to relief in accordance with "the Agreement"—all without specifying which of the two agreements is being addressed. *Id.* ¶¶ 38-40. And in the Complaint's general fact allegations section, Baker similarly refers only to "the Agreement" and "Great Northern's initial breach," without any additional clarification. *Id.* ¶¶ 27, 29. These assertions further identify the Defendants' purported "duties"—at least some of which appear to relate to the alleged agreements—but again, the Complaint fails to specify which contract, if either, these supposed obligations concern. *See id.* ¶¶ 30-32. Therefore, the Court concludes, for all the reasons identified above, that the Complaint fails to plausibly allege a breach of contract claim against Great Northern.

      B.      *Common Law Fraud (Second Claim for Relief)*

The Complaint's second claim asserts that Defendants Great Northern, Loftis, Abercrombie, and Martin defrauded Baker in violation of Texas law. To state a fraud claim under Texas law, a complaint must plausibly set forth the following elements:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

In addition, fraud claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *See id.* at 1032. Rule 9(b) requires that fraud pleadings "state with particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b). This means that, as a

general rule, "'the who, what, when, where, and how [must] be laid out'" in the fraud pleadings to satisfy Rule 9(b)'s requirements. *Shandong Yinguang*, 607 F.3d at 1032 (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

Baker asserts two related theories for his common law fraud claim. First, the Complaint alleges that "Loftis, on behalf of himself and the other defendants, made" a number of false statements during the negotiation of Baker's eventual investment in Great Northern. Compl. ¶ 43. Specifically, the Complaint identifies five purportedly false or misleading statements made by Loftis:

> (1) that the investment was already profitable and producing oil; (2) that plaintiff's investment would generate a substantial return; (3) that the investment would be managed and protected; (4) that Loftis had a long history of success for investors, who made a lot of money with him; [and] (5) that Great Northern Energy was producing more than 300 gross barrels per day of oil from its operations.

Compl. ¶ 43. Second, the Complaint also claims that "Defendants also omitted to disclose material facts" regarding Loftis's prior criminal conviction and civil default judgment "prior to [Baker's] purchasing the unregistered securities in question." *Id.* ¶ 44.

Defendants argue that the Complaint fails to adequately allege fraud under either of the two theories asserted. With respect to the affirmative misrepresentations alleged, Defendants contend that the Complaint fails to detail these "false" statements with sufficient particularity under Rule 9(b). Def.'s Mot. 5. Defendants further argue that the allegations supporting this theory fail to adequately demonstrate the falsity of the purported statements. *Id.* With respect to Baker's fraud by omission allegations, Defendants assert that this theory is also inadequately pled, because "the Complaint fails to identify . . . any duty Defendants were under to disclose these facts." *Id.* at 5-6. While Baker disputes each of these assertions, the Court, as follows, agrees with Defendants that the Complaint fails to adequately plead common law fraud under either of the theories asserted.

First, the Complaint does not allege the false statements at issue with sufficient particularity under Rule 9(b). For example, the Complaint only vaguely asserts that Defendant Loftis made the false statements "[b]eginning in the summer of 2012," Compl. ¶ 43, which does not sufficiently explain *when* the five statements at issue were made. The Complaint further fails to specify *where* the false statements were made, other than to say that Baker "met or spoke over the phone various times with Defendant Loftis." *Id.* ¶ 12. The Complaint is also wholly devoid of any details surrounding the Defendants' supposed use of Great Northern "as their own personal business and 'cookie jar.'" *Id.* ¶ 30. While Baker urges that to require a greater degree of specificity "goes beyond the requirements or intent of Rule 9(b)," and that the precise circumstances surrounding these alleged discussions "can be assumed," such assertions are inconsistent with the law. Pl.'s Resp. 4-5. As this Court has noted in similar circumstances,[6] the specificity required to satisfy Rule 9(b) cannot simply be assumed; at the very least, the requisite details must be stated in the Complaint, rather than in a responsive brief, which Baker has failed to do.

Second, the Complaint also fails to adequately plead *how* the statements underlying the fraud claim are false. After identifying the five purportedly false or misleading statements mentioned above, the Complaint asserts that these representations are "false and misleading in that:"

> (1) Defendants did not have the resources necessary to maximize the value of the assets; (2) Defendants had substantial undisclosed debt, and adverse claims and [3] management had . . . used the financial and other resources of [Great Northern] as a personal 'cookie jar' for their own personal gain and benefit.

---

[6] *See, e.g.*, *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 817 (N.D. Tex. 2009) ("[I]f the Court were to assume the representations alleged were made on the specific dates, it would essentially be allowing Plaintiffs to amend their Complaint to add specificity through briefing—wherein Plaintiffs point to the listed specific dates in response to various Defendants' arguments that they have not identified when the alleged representations were made. Such an amendment would be improper.").

- 11 -

*Id.* ¶ 47. This brief explanation, however, does not satisfy Baker's burden to plead falsity for any of the five "misrepresentations" alleged.

With respect to the first false statement alleged, nowhere does the Complaint indicate that "the investment" was not actually "profitable and producing oil" *at the time Loftis made this statement to Baker*. Nor does the Complaint assert that Loftis was incorrect when he stated that Great Northern, *at the time*, was "producing more than 300 gross barrels per day of oil from its operations." Similarly, even though the deal ultimately went poorly for Baker, the allegations do not sufficiently demonstrate that Loftis was wrong to boast, *during negotiations*, that the "investment would generate a substantial return" or "that the investment would be managed and protected." Likewise, the Complaint never actually says that Loftis's statement regarding his "history of success for investors" was a lie—he could have very well had a successful history notwithstanding his prior legal troubles. And even assuming one or more of these statements was actually false or misleading, the way most of them are currently pleaded makes them "so general as to constitute [lawful] puffing."[7] *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 373 (5th Cir. 2004).

Lastly, Baker's alternative fraud theory—fraud by omission—is also inadequately pled. "To sustain a fraud by omission claim, the plaintiff must prove all the elements of 'fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by omission of a material fact in light of a duty to disclose.'"[8] *Smith v. BCE*

---

[7] *See also Texas Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex. App. 2001) ("Johnson's comments amounted to nothing more than puffing or dealers' talk. As such, they do not amount to actionable misrepresentation.") (citing *Paull v. Capital Resource Management*, 987 S.W.2d 214, 218–19 (Tex. App. 1999)).

[8] For a concise statement of the elements of a fraud by omission claim, see *CDI Corp. v. GT Solar Inc.*, No. H–11–3487, 2013 WL 873785, at *2 (S.D.Tex. Mar. 7, 2013).

*Inc.*, 225 Fed. App'x 212, 218 (5th Cir. 2007) (quoting *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005)) (brackets omitted). Accordingly, Baker's fraud by omission claim cannot be sustained "unless there is a duty to disclose the information," which arises "only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citations omitted). Texas courts have found a duty to disclose in the following circumstances:

> (1) when the parties have a confidential or fiduciary relationship, (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak.

*Ins. Co. of N. Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. 2007) (citing *Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670–71 (Tex. App. 2006)).

In this case, Baker argues that Defendants had a duty to disclose Loftis's "conviction for bank fraud and his separate $2,000,000 judgment against him," because such information constituted "'a material fact which was necessary in order to make [other] statement[s] made not misleading.'" Pl.'s Resp. 6 (quoting *Duperier v. Texas State Bank*, 28 S.W.3d 740, 745 (Tex. App. 2000)). More specifically, Baker asserts that this omitted information made "every single statement [Loftis] and his company made in an effort to solicit cash from Baker and any other investor misleading," as "[i]t would be material for any investor to know" these facts. *Id.* In other words, Baker advocates for a rule under which a person is *per se* liable for fraud if he or she asks for or receive investors' funds without disclosing that he or she, or an affiliate manager, has been charged in the past of financial

improprieties. Baker, however, provides no legal support for such a rule. Nor is the Court aware of any. Without any authority to rely on, or more specificity as to the circumstances surrounding the purported omissions, the Court cannot reasonably find that Defendants were legally obligated to disclose Loftis's legal history to Baker. Therefore, the Court concludes that Baker's Complaint fails to adequately state a fraud claim under either an affirmative fraud or fraud by omission theory.

    C.     *Securities Law Fraud (Third Claim for Relief)*

    Baker's next claim alleges that all Defendants except Arkatex engaged in securities fraud in violation of (1) § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereto, (2) the Texas Securities Act, and (3) Colorado Securities Act. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; Tex. Rev. Civ. Stat. Ann. arts. 581-7 & 581-33; Colo. Rev. Stat. § 11-51-501.

    The basic elements of a federal securities fraud claim are similar to those of a common law fraud claim: "(1) a material misrepresentation (or omission) . . . ; (2) scienter . . . ; (3) a connection with the purchase or sale of a security . . . ; (4) reliance . . . ; (5) economic loss . . . ; and (6) loss causation . . . ." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (emphasis and citations omitted). As with common law fraud claims, Rule 9(b) "appl[ies] to securities fraud claims." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2003) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). In addition, Baker must satisfy the "high standards for pursuing [a] federal securities fraud sui[t]" set by the Private Securities Litigation Reform Act ("PSLRA"). *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 532 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Specifically, the Complaint must meet the PSLRA's "enhanced [] particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b)," which include, among other requirements, that plaintiffs

"'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . .'" *Id.* (citing 15 U.S.C. § 78u-4(b)(1)(B)) (alterations in original).

Here, for similar reasons articulated above in connection with Baker's common law fraud claim, the Complaint fails to properly allege a material misrepresentation or omission for purposes of its federal securities fraud claim. Simply put, the standards for pleading a federal securities fraud cause of action require much more specificity than the Complaint provides for the misrepresentations and omissions alleged, including *when* and *where* the statements were made, and *how* those statements or omissions were false, misleading, or otherwise actionable under the federal securities laws.[9]

For essentially the same reasons, the Court determines that the Complaint fails to adequately state claims under the Texas Securities Act and Colorado Securities Act.[10] The Texas Securities Act generally allows security purchasers to sue "'[a] person who offers or sells a security" that makes "'an untrue statement of a material fact'" or omits material facts "'necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'" *Dorsey*

---

[9] The Court does not, at present, address Defendants' argument that this claim also violates the group pleading prohibition in the PSLRA and fails to satisfy the scienter element. *See* Def.'s Mot. 7-9. These issues are better addressed only if, and when, Baker sufficiently alleges the misrepresentation/omission element.

Defendants also argue that the Complaint fails to properly allege that the "interests" at issue constitute a security subject to the federal securities laws. *See id.* at 7. But they provide the Court with no reasonable basis to conclude that the alleged interests do not fall within the federal securities law's "broad" definition of a security. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 (1985). Thus, the Court disagrees with Defendants that Baker has not adequately alleged a security subject to the federal securities laws.

[10] Although the Complaint alleges that Defendants "failed to comply with the registration requirements for either Texas or Colorado," Compl. ¶¶ 54, 55, neither Baker nor the Complaint assert that this conduct alone would support the state securities fraud claims alleged. Instead, Baker focuses exclusively in his response on the purported misrepresentations and omissions underlying these alleged state law violations. Thus, in finding dismissal warranted, the Court does not consider whether Baker's claim could survive solely on allegations concerning Defendants' failure to register the securities at issue.

*v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008) (quoting Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2)). Likewise, the Colorado Securities Act "makes it unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to," among other things, "'make any untrue statement of a material fact or'" omit material facts "'necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'" *Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 734 (Colo. App. 2009) (quoting Colo. Rev. Stat. § 11-51-501(1)). And since pleading these state securities law elements requires Baker to "alleg[e] fraud," Rule 9(b) applies as well. FED. R. CIV. P. 9(b). Given that these legal requirements do not significantly differ from the insufficiently-pled elements of Baker's common law fraud claim, the Court concludes that the Complaint's third claim also fails to properly allege securities fraud under either Texas or Colorado law.

D.     *Fraud Under § 12(2) of the 1933 Securities Act (Fourth Claim for Relief)*

Baker's fourth claim for relief similarly alleges that all Defendants except Arkatex engaged in securities fraud in violation of § 12(2) of the Securities Act of 1933. *See* 15 U.S.C. § 77l(a)(2). Like his second and third claims just discussed, Baker's claim under § 12(2) of the Securities Act of 1933 requires well-pled allegations of "an untrue statement of a material fact or affirmative false statement or omission of a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." *Id.* Thus, for the same reasons its fraud claim is insufficiently pled, the Complaint's fourth claim also fails.

One additional defect with this claim warrants discussion at this time. Specifically, as Defendants point out, Baker's fourth claim is also deficient in that "the Complaint does not allege any sale that was made 'through a written prospectus or some oral communication related to a

prospectus.'" Def.'s Mot. 11 (quoting *James Jianhua Wu v. Weizhen Tang*, No. 3:10-CV-0218-O, 2011 WL 145259, at *6 (N.D. Tex. Jan. 14, 2011)). Baker argues that this admitted pleading defect does not warrant dismissal, because Defendants' argument is based "on an unreported District Court case [i.e., *Jianhua Wu*]," rather than "the actual language of the statute," which as Baker notes, provides that the fraud must relate to "'a prospectus or oral communication.'" Pl.'s Resp. 7 (quoting 15 U.S.C. § 77l(a)(2)) (emphasis omitted). But as noted in the unreported district court opinion that Baker asks the Court to disregard, the Supreme Court long ago rejected the very interpretation of § 12(2) that Baker now suggests—holding that "'the phrase oral communication [in § 12(2)] *is restricted to oral communications that relate to a prospectus.*'" *Jianhua Wu*, 2011 WL 145259, at *6 (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 569 (1995)) (emphasis added). Or, as the Fifth Circuit put it, "*Gustafson v. Alloyd Co.* interpreted § 12(2) of the Securities Act to apply only to initial public offerings or sales made to the public through a widely-disseminated prospectus." *Brunig v. Clark*, 560 F.3d 292, 295 (5th Cir. 2009). Therefore, "[§] 12(2) is unavailable in a privately-negotiated" securities agreement like the one alleged in Baker's Complaint. *Id.* As such, Baker's fourth claim fails on this additional ground as well.

E.   *Negligence & Misrepresentation (Fifth & Sixth Claims for Relief)*

With respect to his next two "claims for relief," Baker is not entirely clear as to what exactly he is alleging. The Complaint's fifth claim is titled "negligence," and simply asserts that Defendants engaged in "negligent conduct [that] proximately caused damages to [Baker] . . . in a sum in excess of $250,000," plus special damages. Compl. ¶¶ 71-73. Its sixth claim is titled "misrepresentation," and similarly provides conclusory allegations regarding Defendants' purported breach of duty to disclose material facts to Baker, their "intent to deceive, manipulate or defraud" Baker, Baker's

justifiable reliance "on such misrepresentations in entering into the Agreement," and his "damages in a sum in excess of $250,000," plus special and punitive damages. *Id.* ¶¶ 75-80. Further complicating matters, Defendants address three potential causes of action that could be embodied in these two claims for relief—negligence, intentional misrepresentation, and negligent misrepresentation—while Baker only explicitly defends his allegations as they relate to negligent misrepresentation. *Compare* Def.'s Mot. 11-14, *with* Pl.'s Resp. 8-10. This confusion alone warrants dismissal of both claims, as it leaves Defendants without fair notice of what Baker is even alleging.

Even if Defendants had fair notice of the three potential claims in the Complaint's fifth and sixth claims for relief, each would, nonetheless, warrant dismissal. To the extent Baker alleges a negligence claim, the pleadings are inadequate with respect to at least two elements:[11] (i) Defendants' purported legal duty to Baker and (ii) Defendants' breach of that duty. In fact, the Complaint merely states that "[t]he conduct of Defendants, and each of them, constitutes negligence and such negligent conduct proximately caused damages to Plaintiff," without clarifying what conduct was negligent and how. Compl. ¶ 71. Such conclusory and speculative allegations do not suffice to state a plausible claim.[12] Likewise, to the extent Baker alleges an intentional misrepresentation claim, the Court finds dismissal warranted for the same reasons it dismissed Baker's common law fraud claim. Indeed, allegations recast under a "cause of action for 'intentional misrepresentation' add nothing to [a] fraud caus[e] of action," and thus, the Court is not even

---

[11] *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) ("A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.").

[12] Given the lack of any detail surrounding this claim, the Court declines at this time to rule on Defendants' argument that Baker's negligence claim is barred by the economic loss rule.

obligated to analyze these allegations "separately from [Baker's] fraud causes of action." *Smith v. Tilton*, 3 S.W.3d 77, 82 n.3 (Tex. App. 1999) (citations omitted).

To the extent the Complaint alleges a negligent misrepresentation cause of action, this claim also fails. Under Texas law, the elements of a negligent misrepresentation claim include:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 502 (Tex. App. 2008) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 614 (Tex.App. 2006)). "'Significantly, the sort of false information contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct.'" *Dallas Firefighters Ass'n v. Booth Research Grp., Inc.*, 156 S.W.3d 188, 194 (Tex. App. 2005) (citing *Allied Vista v. Holt*, 987 S.W.2d 138, 141 (Tex. App. 1999); *Airborne Freight Corp., v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App. 1992)).

The Complaint in this case fails to adequately plead a negligent misrepresentation claim in a number of respects. First, Defendants highlight that the Complaint contains "no allegations that Defendants made claims in the course of business or in a transaction in which they had a pecuniary interest or supplied information for the guidance of [Baker] in his business." Def.'s Mot. 13 (emphasis omitted). Baker says that this argument ignores the paragraph under the Complaint's "misrepresentation" heading that "incorporates the allegations made" in all previous paragraphs of the Complaint. Pl.'s Resp. 9. Generally, this sort of "incorporated by reference" pleading—employed

- 19 -

by plaintiffs to add claims not explicitly alleged in their complaint—does not suffice under the federal rules.[13] And such is the case here, where Baker's "incorporated by reference" allegations never mention or even imply that the missing elements of Baker's un-pled claim are being asserted.

Second, to the extent Baker bases his negligent misrepresentation claim on the affirmative representations alleged in the Complaint, these assertions fail because they either relate to future conduct or information that is not alleged to be false. To illustrate, the two "false" statements identified in the Complaint regarding the anticipated success and safe management of Baker's investment "fail as a matter of law because [these] statements . . . were promises of future conduct rather than statements of existing fact." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 380 (Tex. App. 2007) (collecting cases). The other three false statements alleged, while they each relate to existing facts, the Complaint does not adequately allege that these statements contain "false information" for reasons discussed above in connection with Baker's fraud claim.

Finally, to the extent Baker's negligent misrepresentation claim is based on Defendants' alleged omissions, these assertions also fail, because "in Texas, non-disclosures cannot be negligent unless there is a duty to disclose," which as discussed above, Baker has failed to establish. *Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 377 (5th Cir. 2003) (citations omitted).

F.    *Breach of Duty of Good Faith and Fair Dealing, Rescission/Mistake, & Texas Uniform Fraudulent Transfer Act (Seventh, Ninth, & Tenth Claims for Relief)*

---

[13] *See, e.g., Bell v. Dallas Cnty.*, No. 3:08-CV-1834-K, 2011 WL 3874904, at *2 (N.D. Tex. Aug. 30, 2011) ("Such an incorporation is not a short and plain statement of the claim" under Rule 8(a)(2) as it deprives the defendant of fair notice); *Amazon Tours, Inc. v. Quest Global Angling Adventures L.L.C.*, No. CIV.A. 303CV2551M, 2004 WL 1788078, at *4 (N.D. Tex. June 30, 2004) ("While the count incorporates by reference the allegations underlying all of Plaintiff's claims, the Court is of the view that the Complaint nevertheless fails to provide Defendants with fair notice of any conspiracy claim related to Plaintiff's other tort claims.").

The Complaint's seventh, ninth, and tenth claims for relief can be easily disposed of, since Baker makes no effort whatsoever to address the pleading deficiencies that Defendants raise for each claim. Regarding Great Northern's supposed breach of a duty of good faith and fair dealing, Defendants assert that "the Complaint alleges no special relationship that would impose" such a duty, as required by Texas law.[14] Def.'s Mot. 14. Defendants also argue that Baker's "so-called [ninth] 'claim for relief' states no causes of action under Texas law," and even if it did, "it contains no facts whatsoever indicating how the investment was premised upon a mistake" or how rescission is otherwise warranted. *Id.* at 16. Finally, Defendants contend that Baker's Texas Uniform Fraudulent Transfer Act claim should also be dismissed, because Baker's "allegations merely track the language of the statute with no supporting facts to state a claim for relief." *Id.* at 17. Since Baker does not address any of these arguments—indeed, he never even mention these three causes of action in his response—the Court has no reasonable basis to disagree with Defendants that dismissal of all three claims is warranted.

G.    *Conspiracy (Eighth Claim for Relief)*

Baker's conspiracy claim can also be quickly dismissed. For a civil conspiracy claim, the "defendant's liability is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 709-10 (5th Cir. 2009) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App. 2007)). As discussed above and below, the Court dismisses each of the Complaint's tort claims.

---

[14] *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002) ("A common-law duty of good faith and fair dealing does not exist in all contractual relationships. Rather, the duty arises only when a contract creates or governs a special relationship between the parties.") (citations omitted).

Therefore, Baker's derivative conspiracy claim must be dismissed as well.

> H.      *Texas Theft Liability Act (Eleventh Claim for Relief)*

Baker's last claim is brought pursuant to the Texas Theft Liability Act ("TLA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001 *et seq.* To establish a cause of action under the TLA, a complaint generally must allege that: "(1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property . . . ; and (3) the plaintiff sustained damages as a result of the theft." *Olufemi-Jones v. Bank of Am., N.A.*, No. 3:12-CV-3428-L, 2013 WL 1482544, at *3 (N.D. Tex. Apr. 10, 2013) (citing Tex. Civ. Prac. & Rem.Code §§ 134.002(2), 134.003; Tex. Penal Code §§ 31.03(a)).

Defendants argue that Baker's TLA allegations do "not even purport to recite the elements of a TLA claim, much less any supporting factual allegations. Indeed, nowhere does the Complaint identify any property of [Baker's] that Defendants allegedly 'unlawfully appropriated.'" Def.'s Mot. 18. Baker, as he did before, highlights a paragraph under the Complaint's TLA heading "incorporating all previous paragraphs and allegations by reference." Pl.'s Resp. 9. Then, without citing any particular allegations, he argues that "[b]ased on the entirety of the complaint, Baker has more than adequately alleged" each TLA element. *Id.* But as the Court detailed above, this sort of pleading does not satisfy the federal pleading standards, which require Baker to set forth the elements of his TLA claim, and support these elements with non-conclusory, factual allegations. Since the Complaint fails on both these grounds, the Court finds dismissal warranted for Baker's final claim.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion (doc. 25) to the extent

it seeks dismissal of Baker's claims pursuant to Rule 12(b)(6) and **DISMISSES WITHOUT PREJUDICE** all eleven claims in Baker's Complaint.

If Baker seeks to file an amended complaint in an effort to overcome the deficiencies warranting dismissal stated in this Order, the Court **ORDERS** him to do so within <u>thirty (30) days</u> from the date on which this Order is entered. These re-pleadings shall be accompanied by a <u>synopsis no longer than ten (10) pages</u> explaining why the amendments overcome the deficiencies stated herein. If Defendants wish to respond, the Court **ORDERS** them to do so within <u>fourteen (14) days</u> of Baker's filing of his amended pleadings, in a responsive brief <u>no longer than ten (10) pages</u> in length.

In light of its ruling on Defendants' Motion to Dismiss, the Court **DENIES AS MOOT** Defendants' Motion (doc. 25) to the extent it seeks an order compelling arbitration of Baker's dismissed claims. If necessary, the Court will allow Defendants to re-file a motion to compel in accordance with the Court's instructions following a review of Baker's anticipated re-pleadings.

SO ORDERED

DATED: December 3, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE