UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BURDICK BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-0240-B |
| | § | |
| GREAT NORTHERN ENERGY INC., | § | |
| ARKATEX MINERALS LLC, | § | |
| RONALD J. ABERCROMBIE, | § | |
| JOSEPH B. LOFTIS, and | § | |
| NICOLE L. MARTIN | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion to Dismiss for Failure to State a Claim (Doc. 68) and

Defendants' Motion for Leave to File Second Amended Answer and First Amended Counterclaim

(Doc. 74). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's

Motion, and **GRANTS in part** and **DENIES in part** Defendants' Motion.

## I.

## BACKGROUND

This case began as a multi-faceted investor fraud suit, but has since distilled down to a breach

of contract dispute. On one side, Plaintiff Burdick Baker (Baker) brings claims for breach of contract

and fraudulent conveyance. Doc. 37, Pl.'s Am. Compl. ¶¶ 20–45. On the other, Defendants Ronald

J. Abercrombie, Great Northern Energy Inc. (Great Northern), Arkatex Minerals LLC, and Joseph

B. Loftis (collectively, Defendants)[1] bring counterclaims for breach of contract, fraud, and tortious interference with prospective business relations. Doc. 67, Defs.' First Am. Answer and Counterclaims ¶¶ 57–74 [hereinafter Defs.' First Am. Answer].

This Order addresses Defendants' counterclaims. Specifically, it addresses whether they survive dismissal, *see* Doc. 68, Pl.'s Mot. to Dismiss, and whether Defendants may amend their pleadings after the amended pleadings deadline. *See* Doc. 74-2, Defs.' Second Am. Answer and First Am. Counterclaim [hereinafter Defs.' Second Am. Answer].

A.    *Procedural Background*

On January 22, 2014, Baker filed a complaint with this Court. Doc. 1, Compl. The Court dismissed it, but allowed Baker the opportunity to re-plead. Doc. 34, Mem. Op. & Order 22–23. Specifically, it gave him thirty days to file an amended complaint with a synopsis explaining why his amendments would overcome the deficiencies stated in the Court's dismissal order. *Id.* at 23. Baker filed his amended complaint and supporting synopsis, Doc. 37, Am. Compl.; Doc. 38, Pl.'s Synopsis, and Defendants, despite having the option to respond, never did. Instead, on April 3, 2015, Defendants filed a partial motion to dismiss, Doc. 48 Defs.' Mot. to Dismiss, which the Court denied on June 18, 2015. Doc. 55, Mem. Op. & Order. In doing so, the Court approved Baker's Amended Complaint and held that it had overcome the pleading deficiencies identified in the Court's dismissal order. *Id.* at 10 ("Baker's Amended Complaint . . . states two plausible causes of action with sufficient particularity.").

After the Court ruled on Defendants' Partial Motion to Dismiss, the Court entered an order

---

[1] Defendant Nicole L. Martin was terminated on February 22, 2015, when Baker filed his Amended Complaint and no longer named her as a defendant. *See* Doc. 37, Pl.'s Am. Compl.

requiring a joint status report from the parties. Doc. 60, Status Report Order. On July 14, 2015, Defendants filed their Answer; two days later, the parties filed their Joint Status Report; and the next day, the Court entered its Scheduling Order setting out the amended pleadings deadline—November 30, 2015. Doc. 61, Answer; Doc. 63, Joint Status Report; Doc. 64, Scheduling Order 1. On this deadline, Defendants moved for leave to amend their Answer, Doc. 65, Defs.' Mot. for Leave to File First Am. Answer and Counterclaims [hereinafter Defs.' First Mot. for Leave], which the Court granted. Doc. 66, Order. The next day, Defendants filed their First Amended Answer and Counterclaims. Doc. 67, Defs.' First Am. Answer.

B.    *Defendants' Counterclaims*

Defendants bring counterclaims for breach of contract, fraud, and tortious interference with prospective business relations.[2] *Id.* ¶¶ 20–45. To fully understand these counterclaims requires certain background knowledge of Baker's claims. In Baker's Amended Complaint, he explains that he and his brothers acquired interests in oil and gas investments from Great Northern. Doc. 37, Pl.'s Am. Compl 1–2. Unhappy with their investment, they entered into a Reacquisition Agreement with Great Northern. *Id.* ¶ 10. Specifically, Baker's brothers assigned their interests to Baker, and he contracted for Great Northern to repurchase the interests for $175,000.00.[3] *Id.* When the time came for Great Northern to pay Baker, however, it issued him a check not backed by sufficient funds. *Id.* ¶ 15. This prompted the initial breach of contract suit.

---

[2] The Court draws the facts for this section from Defendants' First Amended Answer and Counterclaims (Doc. 67) as it has not granted Defendants leave to file their Second Amended Answer and First Amended Counterclaims (Doc. 74-2).

[3] For simplicity, the Court will refer to Baker and his brothers together as Baker.

For Defendants' breach of contract counterclaim, they allege that the oil and gas investments Baker purchased were subject to a Farm-out Agreement[4] between Great Northern and two other entities. *Id.* ¶ 60. The Farm-out Agreement "required Great Northern to drill or establish production on certain acreage tracts [the Farm-out Acreage] . . . provided that Baker pa[id] installments pursuant to the terms of a Joint Operating Agreement." *Id.* ¶ 61. Specifically, the Joint Operating Agreement required Baker to pay 37.5% of the "additional costs of development, drilling, completion, equipping and producing" for oil wells established as part of the Farm-out Agreement. *Id.* ¶¶ 62–63. According to Defendants, Baker has not paid these costs, which total $120,000.00, and, as a result, Great Northern has been unable to make payments on expenses necessary to realize "returns and profits attributable to its acquisition, development, and production" of the Farm-out Acreage. *Id.* ¶ 65. Defendants claim that this has destroyed the Farm-out Acreage's net value, which Great Northern reasonably believed to be $6,000,000.00, causing losses of $3,750,000.00. *Id.* Defendants seek direct damages of $120,000.00 and consequential damages of $3,750,000.00.

As for Defendants' fraud and tortious interference with prospective business relations counterclaims, they allege "Baker's representatives made false and fraudulent statements" that caused prospective Great Northern customers to withdraw from certain property deals.[5] *Id.* ¶¶ 67, 71. These deals included "advanced negotiations to sell, among other interests, the interests which were the subject of the reacquisition agreement," *Id.* ¶ 67, which Defendants characterize as "efforts to

---

[4] "A farm-out agreement is a contract to assign oil and gas lease rights in certain acreage upon the completion of drilling obligations and the performance of any other covenants and conditions therein contained." 2-4 Williams & Meyers, *Oil and Gas Law* § 432 (2015) (quotations omitted).

[5] For simplicity, the Court will refer to Baker and his representatives together as Baker. The Court recognizes that it now refers to Baker, his brothers, and his representatives all as Baker. Given the context surrounding each reference, the Court does not anticipate any confusion.

acquire funds to purchase the reacquisition contract interests." *Id.* ¶ 68.

According to Defendants, Baker's interference resulted in the loss of a potential sale to Latana Oil and Gas (Lantana) and to Parker & Parker (P&P).[6] *Id.* ¶¶ 67, 71. Great Northern had reached a point in negotiations with Lantana and P&P "at which they were on the verge of achievement of an executed contract." *Id.* It informed Baker of the prospective sales, and Baker contacted "not only officials of Latana [or P&P], but also prospective third parties with whom Latana [or P&P] was dealing" for the "purpose of interfering with and preventing Great Northern from securing executed contracts for the sales to and through Latana [or P&P]." *Id.* ¶¶ 68, 72. Once in contact, Baker made fraudulent statements and misrepresentations that proximately caused Latana and P&P to withdraw from their deals. *Id.* ¶ 70. Specifically, Baker conveyed that: (1) "Great Northern did not own the interests it was attempting to sell"; (2) "Great Northern's principals were all guilty of and about to convicted of fraud [sic]"; and (3) "Great Northern could not close on any sale it proposed because Baker's represented clients whose interests Great Northern was attempting to sell . . . would not allow their interests to be sold." *Id.* ¶¶ 68, 72.

C.    *Baker's Motion to Dismiss and Defendants' Motion for Leave to Amend*

On January 29, 2016, Baker moved to dismiss Defendants' counterclaims. Doc. 68, Pl.'s Mot. to Dismiss. He raises numerous arguments, including how Defendants' pleadings do not meet the requisite pleading standards, fraud cannot be based on expressions of opinion or statements about the future, and Defendants' breach of contract claim fails because the Reacquisition Agreement contains a merger clause that supersedes the Joint Operating Agreement. Doc. 69, Pl.'s Br. in Supp.

---

[6] Defendants allege many of the same facts against Baker with respect to the Latana and P&P deals. The Court will list these allegations once in reference to both deals.

of Mot. to Dismiss 5–6, 13, 16, 19 [hereinafter Pl.'s Br. in Supp.].

"[I]n response to the Motion to Dismiss," Defendants filed both a Response and a Motion for Leave to File Amended Pleadings. Doc. 77, Defs.' Resp. to Pl.'s Mot. to Dismiss [hereinafter Defs.' Resp.]; Doc. 74, Defs.' Mot. for Leave to File Second Am. Answer and First Am. Counterclaim 1 [hereinafter Defs.' Second Mot. for Leave]. Attached to Defendants' Second Motion for Leave was Defendants' Second Amended Answer, which they incorporated significantly into their Response. For example, Defendants respond to Baker's challenge to their fraud counterclaims by explaining how Defendants' Second Amended Answer, not their first, meets the requisite pleading standards. *See, e.g.*, Doc. 77, Defs.' Resp. ¶¶ 7–9 (relying on second amended pleadings to establish fraud counterclaim). As a result, Defendants' two filings are so inextricably intertwined that the Court must consider them together.

The problem is, Defendants' Second Amended Answer is not their live pleading. On top of this, Baker opposes Defendants' amendments. This has created quite a morass. In order to rule on Defendants' Response to Baker's Motion to Dismiss, the Court must consider arguments based on pleadings that the Court has not allowed. But to rule on Defendants' Motion for Leave to Amend, the Court must consider the success of Baker's Motion to Dismiss.

To clarify the situation, the Court will address Defendants' counterclaims, first to determine whether they survive dismissal, and second to determine whether to grant Defendants' leave to amend their pleadings. In considering dismissal, the Court will look to the facts alleged in Defendants' First Amended Answer, Doc. 67. For dismissed counterclaims, the Court will consider whether Defendants' new pleadings would overcome the deficiencies that warranted dismissal, if so, whether there is good cause to modify the Court's Scheduling Order, and, then, whether the Court

should grant Defendants leave to amend their pleadings; for non-dismissed counterclaims, the Court will consider only the second and third questions.

Additionally, Defendants have made several small additions and alterations to the answer portion of their Second Amended Answer, completely separate from the amendments to their counterclaims. The Court will also consider whether to grant Defendants' leave to make these amendments. Baker has replied to Defendants' Response, and has responded to Defendants' Second Motion for Leave. The motions at issue are therefore ready for review.

## II.

## LEGAL STANDARD

A.      *Federal Rule of Civil Procedure 12(b)(6)*

Rule 12(b)(6) provides that a claim (or counterclaim) may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [claimant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a claimant "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.      *Federal Rule of Civil Procedure 16*

Once a court has entered a scheduling order and the deadline for amending pleadings has passed, the decision to permit post-deadline amendments is governed by Rule 16(b) of the Federal Rules of Civil Procedure. *S & W Enters., L.L.C. v. South Trust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). Pursuant to Rule 16(b), a scheduling order should not be modified unless there is a showing of good cause. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

The Fifth Circuit has set forth four factors to determine whether a movant has established good cause for modification of a scheduling order to allow an untimely amendment of pleadings: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S & W Enters., L.L.C.*, 315 F.3d at 536 (quotations and alterations omitted). "The 'good cause' standard focuses on the diligence of the party seeking a modification of the scheduling order." *Forge v. City of Ball*, No. 3:03-CV-0256, 2004 WL 1243151, at *2 (N.D. Tex. June 4, 2004). A party's mere inadvertence to meet a deadline and the absence of

prejudice to the opposing side are insufficient to establish good cause. *Id.* Rather, one must show that "despite his diligence, he could not have reasonably met the scheduling deadline." *Id.* (quoting *Am. Tourmaline Fields v. Int'l Paper Co.*, No. 3:96-CV-3363, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998)). Rule 15(a), which governs the substance of amendments and allows for liberal leave to amend, only comes into play once the moving party has demonstrated good cause under Rule 16(b). *S & W Enters., L.L.C.*, 315 F.3d at 536 n.4 ("[T]he presence of a scheduling order renders the Rule 15 inquiry secondary.").

Here, Defendants' Second Motion for Leave comes 101 days after the deadline for parties to move for leave to amend pleadings. *See* Doc. 64, Scheduling Order (setting November 30, 2015, amended pleading deadline); Doc. 74, Defs.' Second Mot. for Leave (filed March 10, 2016). Thus, Rule 16(b) governs whether to permit an amendment. *See S & W Enters. L.L.C.*, 315 F.3d at 536. Only if Defendants have demonstrated good cause will the Court consider whether granting leave to amend is consistent with Rule 15. *See id.* at 536 n.4

C.      *Federal Rule of Civil Procedure 15*

Under Rule 15(a), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But this "generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). Although Rule 15 indicates a bias in favor of granting leave to amend, leave is by no means automatic. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 318 (5th Cir. 1996) (citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). A district court must have a "substantial reason" to deny leave, yet the decision remains within the court's discretion. *Smith v. EMC Corp.*, 393 F.3d

590, 595 (5th Cir. 2004) (citing *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). In its discretion, the court should consider several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent one of these factors, leave should be freely given. *Id.* (citing *Foman*, 371 U.S. at 182).

### III.

### ANALYSIS

The Court will first consider Baker's Motion to Dismiss, and, then, it will address Defendants' Second Motion for Leave to Amend.

A.    *Baker's Motion to Dismiss*

<u>1.</u>    <u>Defendants' Breach of Contract Counterclaims</u>

Defendants allege that Baker breached a Joint Operating Agreement. Doc. 67, Defs.' First Am. Answer ¶¶ 59–65. "In Texas, 'the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)) (brackets omitted).

In his Motion to Dismiss, Baker argues that breach was impossible because the Joint Operating Agreement was superseded (and voided) by a merger clause in the Reacquisition

Agreement. Doc. 69, Pl.'s Br. in Supp. 16. He also argues that Defendants' pleadings: (1) do not

provide the written contract, its relevant provisions, or its material terms; (2) do not explain the full

extent of Great Northern's duties under the Joint Operating Agreement or how it performed them;

(3) fail to explain what how Baker breached the contract (i.e., what payments he missed, the amount

of the missed payments, or the provisions breached); and (4) provides no support for how failure to

pay the $120,000.00 owed under the Joint Operating Agreement caused $3,750,000.00 in

consequential damages. *Id.* 19–22.

　　　Regarding the merger clause, Defendants take the position that it does not supersede the

Joint Operating Agreement because: (1) the Joint Operating Agreement and the Reacquisition

Agreement concern different subject matter; (2) the contracts might naturally have been made

separately; and (3) the merger clause did not take effect until after closing on the transaction, which

has not happened. Doc. 77, Defs.' Resp. ¶¶ 17–22. The Court agrees, at least in part. "Before one

contract is merged into another, the last contract must be between the same parties as the first, must

embrace the same subject matter, and must have been so intended by the parties." *Kelly v. Rio

Grande Computerland Grp.*, 128 S.W.3d 759, 768–69 (Tex. App.—El Paso 2004, no pet.). But even

then, a merger clause in a written agreement does not supersede a previous written agreement

"relating to the same subject matter if the agreement[s are] such that [they] might naturally be made

as a separate agreement[s]." *Fish v. Tandy Corp.*, 948 S.W.2d 886, 899 (Tex. App.—Fort Worth

1997, writ denied); *see also Smith v. Smith*, 794 S.W.2d 823, 828 (Tex. App.—Dallas 1990, no writ).

Generally, joint operating agreements embrace different subject matter than acquisition or

reacquisition agreements because the joint operating agreements do not include words of grant or

conveyance. *See Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010); 2-5

- 11 -

Williams & Meyers, *Oil and Gas Law* § 503 (2015). As a result, they naturally might be executed as separate agreements. *See Fish*, 948 S.W.2d at 899. Just the same, the parties very easily could have intended that the second agreement supersede the first. Their intent is unclear. Accordingly, from the Court's perspective, determining the effects of the Reacquisition Agreement's purported merger clause is a task better left until summary judgment when the Court will have better access to the facts surrounding the parties' intent when they executed the Reacquisition Agreement. Thus, the Court concludes, at this stage, that the merger clause in the Reacquisition Agreement does not supersede the terms of the Joint Operating Agreement.

Regarding the plausibility of their counterclaims, Defendants rely entirely on the pleadings in their Second Amended Answer. *See* Doc. 77, Defs.' Resp. ¶ 23. But, as explained above, the Court is considering Defendants' First Amended Answer for this portion of the Order. Baker challenges each element for substantive plausibility. Having considered Defendants' original breach of contract counterclaim, the Court finds that it was insufficiently pleaded.

To sufficiently allege a breach, a party must "identify what provisions were breached or provide factual allegations about the terms of the [contract]." Doc. 34, Mem. Op. & Order 7–8 (quoting *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. 2014)); *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014). Here, Defendants allege that the Joint Operating Agreement required "Baker to pay additional costs of development, drilling, completion, equipping and producing each well for which production is established" by Great Northern on the Farm-out Acreage. Doc. 67, Defs.' First Am. Answer ¶ 62. Though this may not identify what provision of the Joint Operating Agreement Baker allegedly breached, it provides factual allegations about the terms of the contract. But Defendants

do not plead that the necessary circumstances warranting payment occurred, which is the second element of a breach of contract claim. *See Smith Int'l, Inc.*, 490 F.3d at 387. And they give little clue as to how they calculated the direct damages for breach ($120,000.00) or the consequential damages for loss of value ($3,750,000.00), which relates to the fourth element. Thus, Defendants do not "allege enough facts about the terms of the [contract] to raise their right to relief above the speculative level." *Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 603. Therefore, the Court **DISMISSES** Defendants' breach of contract counterclaim.

### 2. Defendants' Fraud Counterclaims

To state a fraud claim under Texas law, a complaint must plausibly set forth the following elements:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

In his Motion to Dismiss, Baker argues that Defendants' fraud counterclaim does not allege sufficient facts to state a plausible claim because it alleges that Baker made statements to Lavana and P&P, not to Defendants. Doc. 69, Pl.'s Br. in Supp. 7. Defendants do not directly respond; instead, they rely on the facts pleaded in Defendants' Second Amended Answer, which the Court will address in its Motion for Leave to Amend analysis. Baker is correct. "As a general rule, a person making a representation is only accountable for its truth to the person he seeks to influence and no one else

- 13 -

has a right to rely on the representation or make a claim based upon its alleged falsity." *Hall v. Douglas*, 380 S.W.3d 860, 869 (Tex. App.—Dallas 2012, no pet.); *see also Westcliff Co. v. Wall*, 267 S.W.2d 544, 546 (Tex. 1954) ("A person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence."); 20-336 Dorsaneo, *Texas Litigation Guide* § 336.04 (2015) ("An intent to induce action by someone other than the person claiming fraud will not support a fraud cause of action."). Here, Baker allegedly made numerous fraudulent statements to Lavana and P&P, not to Defendants. Thus, under Texas law, while Lavana and P&P may have a cause of action for fraud against Baker, Defendants have no right to recover for Baker's statements. Therefore, the Court **DISMISSES** Defendants' fraud counterclaims.

### 3.   Defendants' Tortious Interference with Prospective Business Relations Counterclaims

To state a claim for tortious interference with prospective business relations under Texas law, a complaint must plausibly set forth the following elements:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

In his Motion to Dismiss, Baker challenges each element for substantive plausibility. Doc. 69, Pl.'s Br. in Supp. 13–15. He takes issue mostly with the "conclusory" nature of the statements supporting the reasonable probability that Great Northern and Latana or P&P would have entered into a business relationship, and the insufficiency of pleaded facts to "support a claim that Baker's alleged statements were false." *Id.* at 13–14. Defendants partially respond to Baker's Motion to

- 14 -

Dismiss, briefly addressing what constitutes independently tortious or unlawful conduct, before explaining how its Seconded Amended Answer is sufficiently pleaded. Doc. 77, Defs.' Resp. ¶¶ 11–16.

First, Baker argues that Defendants did not plead facts to support their allegations that Great Northern had "entered into advanced negotiations to sell" property interests to Latana and P&P. Doc. 69, Pl.'s Br. in Supp. 13–14 (quoting Doc. 67, Defs.' First Am. Answer ¶¶ 67, 71). Baker maintains that these allegations are conclusory, and that a negotiation does not create a reasonable probability of the entering into a business relationship. However, Defendants also allege that the negotiations had reached the "verge of achievement of an executed contract." Doc. 67, Defs.' First Am. Answer ¶¶ 67, 71. Accepted as true, this allegation demonstrates a reasonable probability that Great Northern and Latana or P&P would have entered into a business relationship.

Second, Baker argues that Defendants did not plausibly allege that his conduct was independently tortious (either fraudulent or slanderous) because there is an absence of indicia that his statements were untrue. Doc. 69, Pl.'s Br. in Supp. 14. Baker is incorrect. Independently tortious or unlawful conduct includes "fraudulent statements about the plaintiff to a third person." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). "To be fraudulent a statement must be material and false, the speaker must have known it was false or acted recklessly without regard to its falsity, the speaker must have intended that the statement be acted on, and [the] hearer must have relied on it." *Id.* at 727. A pleading party need not "prove an independent tort. Rather, . . . [he] must prove that the defendant's conduct would be actionable under a recognized tort." *Id.* at 726.

Here, Defendants allege that Baker made numerous statements about Great Northern to Latana and P&P that were either "false or fraudulent." For example, they communicated that "Great

Northern's principals were all guilty of and about to [be] convicted of fraud." Doc. 67, Defs.' First. Am. Answer ¶¶ 68, 72. Reading through Defendants' pleadings, the Court can reasonably infer that this statement, from Defendants' perspective, was untrue, material, made with knowledge or reckless disregard of its falsity, made with intent, and had effect. Thus, this type of conduct would be actionable under a recognized tort. *See Sturges*, 52 S.W.3d at 726. Therefore, Defendants have sufficiently pleaded this element.

As for the other elements of Defendants' tortious interference counterclaim, Baker challenges them only superficially. The Court, having reviewed Defendants' First Amended Answer, concludes that they have sufficiently pleaded that: (1) Baker acted with a conscious desire to prevent the relationships between Great Northern and Latana or P&P by having the "purpose of preventing Great Northern from securing executed contracts for the sales," Doc. 67, Defs.' First. Am. Answer ¶¶ 68, 72; (2) Baker's conduct was the proximate cause of Defendants' injury—the alleged facts allow the Court to draw a reasonable inference as to the cause of Latana's and P&P's choice to forgo business relations with Great Northern, *id.*; and (3) that Defendants suffered actual damages in the sums of $14,000,000.00 and $8,000,000.00. *Id.* ¶¶ 67, 71. Accordingly, Baker's Motion to Dismiss Defendants' tortious interference counterclaims is **DENIED**.

B.    *Defendants' Second Motion for Leave to Amend*

Now the Court must decide whether to grant Defendants leave to amend. Previously, the Court allowed Baker the opportunity to re-plead when the Court dismissed his claims. Specifically, it granted leave for him to file an amended complaint with a synopsis explaining why his amendments would overcome any deficiencies. The Court would have afforded Defendants the same opportunity had they not already moved for leave to amend, so now, to promote fairness, the Court will treat

Defendants' Second Amended Answer and Second Motion for Leave as their re-pleading and synopsis.[7] It will first consider whether Defendants' re-pleadings overcome the deficiencies stated in this Order, second, whether there is good cause to amend the Court's Scheduling Order, and, third, whether granting leave to amend is consistent with Federal Rule of Civil Procedure 15.

1.      Pleading Deficiencies

As explained above, the Court found deficiencies in Defendants' breach of contract and fraud counterclaims. Defendants' breach of contract counterclaim failed because Defendants' pleadings did not "allege enough facts about the terms of the [contract] to raise their right to relief above the speculative level." *Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 603. In their Second Amended Answer, Defendants overcome any deficiencies by plainly stating: (1) that the Joint Operating Agreement existed and was binding on Baker, Doc. 74-2, Defs.' Second Am. Answer ¶ 62; (2) that it required Baker to pay 37.5% of the "costs of development, drilling, completion, equipping and producing each well for which production is established" by Great Northern on the Farm-out acreage, *id.* ¶¶ 64, 66; (3) that Great Northern tendered performance when it "drilled, and attempted recompletion of two wells," *id.* ¶¶ 64–66; (4) that this performance cost $400,000.00, which entitled Great Northern to $150,000.00 in proportional costs, *id.*; and (5) that Baker failed to pay this amount. *Id.* ¶ 67.

Defendants, however, do not sufficiently plead an entitlement to consequential damages.

---

[7] The Court recognizes that this does not result in completely equal treatment. Baker benefitted from the Court's identification of his pleading deficiencies, but Defendants will not have this advantage. This is because Defendants chose to move for leave to amend, attach their amended pleadings, and incorporate them in their Response to Baker's Motion to Dismiss without receiving Court approval. The possible benefit of this tactical decision is that the Court might have considered their amended pleadings in its Motion to Dismiss analysis. The downside is that Defendants do not receive the Court's guidance on the deficient aspects of their pleadings.

Under Texas law, "[c]onsequential damages are those damages that result naturally, but not necessarily, from the defendant's wrongful acts." *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011) (quoting *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (per curiam)). As such, they "are recoverable only if the breaching party had notice or could have foreseen at the time the contract was made that the other party would suffer that loss if the contract was not performed according to its terms." 2-21 Dorsaneo, *Texas Litigation Guide* § 21.02 (2015) (collecting cases). Neither Defendants' First or Second Amended Answer alleges that Baker had notice or could have foreseen at the time the contract was made that failure to pay its proportion of the drilling and development costs would result in a $3,750,000.00 loss to Great Northern. At best, Defendants allege that the loss was the "proximate result" of Baker's breach, which hints at foreseeability without actually alleging it. This simply is not enough. Thus, Defendants' Second Amended Answer does not overcome the deficiency in its request for consequential damages.

Defendants' fraud counterclaims failed because they allege that Baker made fraudulent statements to third parties, rather than to Defendants. Defendants' Second Amended Answer, however, alleges that Baker, through his attorney, made fraudulent statements to Defendants. "Specifically, the complaint asserts that Baker's attorney, Scott made a false or misleading statement to Loftis as representative of Great Northern." Doc. 77, Defs.' Resp. ¶ 9. Scott allegedly misrepresented that "if Great Northern tendered the sum of $[3]0,000[8] . . . by December 24, 2013, it would be applied towards the purchase money, and would extend the time in which Great

---

[8] Defendants' Response actually states that Scott requested Great Northern tender $20,000.00, not $30,000.00; however, Defendants' Second Amended Answer indicates that Defendants, "[i]n compliance and reliance upon Jonathan Scott's representations, . . . tendered the sum of $30,000." Doc. 74-2, Defs.' Second Am. Answer ¶ 71. The Court, therefore, will refer to this amount in its fraud counterclaim analysis.

Northern could perform under the contract." *Id.* (citing Doc. 74-2, Defs.' Second Am. Answer ¶¶ 71–72). This overcomes the pleading deficiency set out above.

But this is beside the point. Defendants' Second Amended Answer alleges, for the first time, a series of fraudulent misrepresentations by Baker's attorney to Defendants regarding an attempted payment of $30,000.00 to partially satisfy the $175,000.00 owed under the Reacquisition Agreement. *See* Doc. 74-2, Defs.' Second Am. Answer ¶¶ 71–76. These new fraud counterclaims have nothing to do with Defendants' original fraud counterclaims associated with the failed deals between Great Northern and Latana or P&P. As a result, even though Defendants' new fraud counterclaims would state a plausible entitlement to relief, they are so materially different from Defendants' original fraud counterclaims that the Court will not grant leave to amend. Below, the Court explains why.

### 2.    Rule 16

Pursuant to Rule 16(b), a scheduling order should not be modified unless there is a showing of good cause. Fed. R. Civ. P. 16(b)(4). In determining whether a movant has established good cause, courts consider: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S & W Enters., L.L.C.*, 315 F.3d at 536. Here, Defendants address whether the Court should grant leave to amend under Federal Rule of Civil Procedure 15, not 16. Doc. 74, Defs.' Second Mot. for Leave 2 (arguing that leave for amend should be freely given when justice so requires—the Rule 15 standard). As a result, they do not address the four factors listed above. *See id.*[9]

---

[9] The Court recently set another motion for hearing because it would modify the Court's Scheduling Order, and the parties did not brief the relevant factors for determining good cause under Rule 16. *See*

i.    *Explanation for the Failure to Timely Move for Leave to Amend*

One obvious reason why Defendants failed to move for leave to amend before the deadline was because they do so now in response to a motion to dismiss that came after the deadline. To some extent this explains how Defendants, "despite [their] diligence, . . . could not have reasonably met the scheduling deadline." *Forge*, 2004 WL 1243151, at *2 (quoting *Am. Tourmaline Fields*, 1998 WL 874825, at *1). Accordingly, this factor weighs in favor of modifying the Scheduling Order to then consider whether to grant Defendants leave to amend their pleadings, with two exceptions.

First, Defendants' Second Amended Answer adds and alters language responsive to Baker's Amended Complaint. *See* Doc. 74-2, Defs.' Second Answer ¶¶ 52, 55, 58–59. Baker's Motion to Dismiss Defendants' Counterclaims does not address this language because this language is unrelated to Defendants' counterclaims. Rather, it is responsive to Baker's claims. Thus, with respect to these amendments, there is no justification for Defendants' failure to meet the scheduling deadline or timely move for leave to amend.

Second, Defendants' Second Amended Answer completely changes the basis for their fraud counterclaims. *Compare* Doc. Doc. 67, Defs.' First Am. Answer ¶¶ 67–74 (basing fraud claims on statements made to Latana and P&P that allegedly disrupted multi-million dollar sales), *with* Doc. 74-2, Defs.' Second Am. Answer ¶¶ 71–76 (basing fraud claims on statements made to Defendants resulting in payments of $30,0000.00). Baker's Motion to Dismiss does not address this alleged $30,000.00 fraud, which happened well before the amended pleadings deadline, so Defendants

---

Doc. 90, Order 1–5. The Court did so because it believed it could not resolve the matter based on the parties' incomplete briefing. Here, however, the Court can determine whether to grant leave to amend without additional input from the parties. Therefore, it will proceed without setting Defendants' Motion for hearing.

cannot use this as an excuse for their delay. This means Defendants were aware of the facts underlying their new counterclaim and could have brought it at any time, but chose not to until more than 100 days after the amended pleadings deadline. *See S & W Enters., L.L.C.*, 315 F.3d at 536. Such delay is unreasonable. *See Spear Mktg., Inc. v. BancorpSouth Bank*, 3:12-CV-3583, 2013 WL 4077032, at *3 (N.D. Tex. Aug. 12, 2013) (Boyle, J.). Therefore, the Court concludes that diligence could have avoided the need for this amendment, which demonstrates a lack of good cause.

ii.     *Importance, Potential Prejudice, and Availability of Continuance to Cure Prejudice*

The Court's consideration of the three remaining factors varies by amendment.

a.     Defendants' non-counterclaim amendments

The amendments to the non-counterclaim portion of Defendants' Second Answer are important because they bolster Defendants' defenses and affirmative defenses. *See* Doc. 74-2, Defs.' Second Answer ¶¶ 52, 55, 58–59. But amending defenses two years into the proceedings has an equally prejudicial tinge that weighs against granting leave to amend. A continuance would not cure such prejudice. Thus, three of the four factors indicate a lack of good cause. Therefore, the Court will not modify its Scheduling Order to allow Defendants to move for leave to amend with respect to this portion of their pleadings.

b.     Amendments to Defendants' tortious interference counterclaims

The amendments to Defendants' tortious interference counterclaims have little importance because they provide only slightly more detail and because Defendants' original counterclaims survived dismissal. Thus, the prejudice from such amendments is negligible. In fact, the increased clarity may assist Baker in responding to the specific aspects of this allegation. As a result, a continuance is unnecessary. Though the absence of prejudice is insufficient to establish good cause,

see *Forge*, 2004 WL 1243151, at *2, here, Defendants also, despite diligence, could not reasonably met the scheduling deadline. *See id.* Accordingly, the Court concludes that there is good cause to modify its Scheduling Order and to consider whether to grant Defendants leave to amend this portion of their pleadings.

c.      Amendments to Defendants' other counterclaims

The amendments to Defendants' breach of contract and fraud counterclaims have great importance because the Court dismissed them in their original form but would allow them as amended. Granting Defendants leave to amend their breach of contract counterclaim prejudices Baker only in that it would revive the counterclaim against him. It would not require additional discovery or extensions of other deadlines. *See Garcia v. Univ. of Tex. Sw. Med. Ctr. at Dall.*, 3:11-CV-3282, 2012 WL 4457499, at *2 (N.D. Tex. Sept. 26, 2012) (discussing prejudice of additional discovery and delay). Conversely, granting Defendants leave to amend their fraud counterclaims would introduce a completely new and different fraud counterclaim two years into the proceedings, which would be highly prejudicial. Baker has already filed its Motion to Dismiss against Defendants' counterclaims, and now would have to litigate a completely new counterclaim. *See Orafunam v. AT & T Mobility Services, LLC*, 3:12-CV-0976, 2013 WL 1064825, at *2 (N.D. Tex. Mar. 14, 2013) (discussing prejudice of having previously filed dispositive motion). Additionally, a continuance would not cure the prejudice of either amendment because this case has already delayed too long in the motion to dismiss stage. Accordingly, the Court concludes that good cause exists to modify its Scheduling Order and to consider whether to grant Defendants leave to amend their breach of contract counterclaim because the prejudice is surmountable, and because despite diligence, Defendants could not have reasonably met the amended pleadings deadline. The Court

- 22 -

also concludes that good cause does not exist modify its Scheduling Order to allow Defendants to move for leave to amend the fraud counterclaim portion of their pleadings because the prejudice of adding an essentially new cause of action this late in the litigation is extreme; additionally, because Defendants' new and original fraud counterclaims are materially different, the Court finds no justification for Defendants' failure to meet the scheduling deadline.

        d.      Conclusion

    Therefore, under Rule 16, Defendants have demonstrated good cause for the Court to modify its Scheduling Order to allow Defendants to move for leave to amend their tortious interference and breach of contract counterclaims. The Court will now consider whether to grant Defendants leave to amend under Rule 15.

        3.      Rule 15

    As explained above, under Rule 15, courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig*, 332 F.3d at 864 (quoting *Foman*, 371 U.S. at 182). Here, the delay, while significant, is not yet undue. Defendants do not appear to have acted in bad faith or with dilatory motive. There have been no repeated failures to cure deficiencies, and the prejudice of allowing Defendants to amend their breach of contract and tortious interference counterclaims is not undue. Thus, the Court concludes that leave to amend should be given. Therefore, the Court finds that Defendants may amend their breach of contract and tortious interference counterclaims consistent with their Second Amended Answer. This means that Defendants may incorporate without

alteration the language from their Second Amended Answer for the amendments approved by this Order. Defendants may not add additional parties or counterclaims.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion, and **GRANTS in part** and **DENIES in part** Defendants' Motion.

- Defendants' fraud counterclaims are **DISMISSED with prejudice**;

- Defendants' breach of contract counterclaim is **DISMISSED without prejudice**, except for the portion relating to consequential damages, which is **DISMISSED with prejudice**;

- Defendants **may re-plead** their breach of contract counterclaim consistent with their Second Amended Answer except for the portion relating to consequential damages;

- Defendants' tortious interference with prospective business relations counterclaims survive dismissal though Defendants **may re-plead** them consistent with their Second Amended Answer; and

- Defendants **may not re-plead** the non-counterclaim portions of their Second Amended Answer.

If Defendants choose to re-plead their breach of contract and tortious interference counterclaims, the Court **ORDERS** that they file such re-pleadings within 10 days of this Order. Defendants may incorporate without alteration the language from their Second Amended Answer for the amendments approved by this Order. Defendants may not add additional parties or counterclaims.

- 24 -

SO ORDERED.

SIGNED: May 18, 2016

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE